**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SAMIYA MALIK and AJET ARUCI,

Petitioner,

v.

WILSON, et al.,

Respondents.

Case No. 1:26-cv-08145 JLT HBK

ORDER DENYING REQUEST FOR A TEMPORARY RESTRAINING ORDER

(Docs. 1, 5)

## I. INTRODUCTION

Ajet Aruci is a noncitizen with a final order of removal; he presently is detained by Immigration and Customs Enforcement at the Golden State Annex Detention Center in McFarland, California. In 2023, Samiya Malek, a U.S. Citizen and Ajet's wife, filed an I-130 Petition for Alien Relative naming Ajet as the beneficiary—the approval of which is a pre-requisite to any attempt by Ajet to adjust his status. Samiya's I-130 Petition remains pending, with no interview presently scheduled. Even still, Respondents recently actively attempted to remove Ajet to his native Albania.

Plaintiffs filed a pleading styled both as a civil complaint for declaratory, injunctive, and mandamus relief and a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241. (Doc. 1.) Plaintiffs allege that adjudication of the I-130 has been unlawfully withheld and unreasonably delayed, and that removing Ajet before any I-130 interview would be unlawful.

(*Id.*) In a concurrently filed request for a temporary restraining order, (Doc. 7), Plaintiffs seek an order directing the U.S. Customs and Immigration Service to adjudicate Samiya's I-130 within 60 days and barring Respondents from removing Ajet until the adjudication is complete. The government filed a response to the TRO (Doc. 12) and Plaintiffs replied (Doc. 13). For the reasons set forth below the Court **DENIES** the TRO request.

## II. FACTUAL & PROCEDURAL BACKGROUND

Ajet previously pursued habeas relief in this Court in *Aruci v. Wilson*, No. 1:26-cv-05132-JLT-EGC ("*Aruci*"). The factual background set forth by the Court in its order addressing that petition provides a helpful starting place:

> Petitioner is a citizen of Albania. (Doc. 1 at 3.) He entered the United States on February 18, 2008, as a B-2 visitor, and later changed his status to a F-1 student. (*Id.* at 4; Doc. 7 at 13.) Petitioner claims to have lived in the United States continuously for the past eighteen years. (Doc. 1 at 4.) On June 23, 2011, Petitioner was arrested and charged with violating New York Penal Law § 120.50(3) stalking in the third degree. (*See* Doc. 7 at 13, 17.) Petitioner indicates that he was never convicted of this offense, (Doc. 8 at 4), and immigration court records confirm that the charge of stalking was dismissed on April 1, 2013. (Doc. 7 at 17 n.1.) Apart from this arrest, Petitioner has no other criminal history. (*See id.* at 13.)
>
> On July 2, 2011, the Department of Homeland Security detained the Petitioner following his release from Albany County Jail and issued him a Notice to Appear charging him as removable under 8 U.S.C. § 1227(a)(1)(C)(i). (Doc. 1 at 4; *see* Doc. 7 at 2, 7.) Specifically, the charge of removability was for not attending college and therefore failing to comply with the conditions of his F-1 student visa. (*See* Doc. 7 at 7, 13.) On August 4, 2011, DHS released Petitioner from custody after he posted a $7,500 bond granted by the Immigration Judge. (*Id.* at 13.)
>
> On November 26, 2012, Petitioner filed an I-485 application for adjustment of status. (Doc. 7 at 13.) On September 29, 2016, the IJ denied Petitioner's application for cancellation of removal and ordered him removed to Albania. (*Id.* at 13, 16–27.) Petitioner appealed that decision to the Board of Immigration Appeals, and on May 24, 2017, the BIA dismissed the appeal. (*Id.* at 13, 29–32.) On October 6, 2017, Petitioner filed a motion to reopen his immigration proceedings with the BIA. (*Id.* at 13.) On March 29, 2018, the BIA denied Petitioner's motion to reopen. (*Id.* at 13, 45–48.) In March 2018, Petitioner married a U.S. citizen with whom he later had a daughter. (Doc. 1-4 at 1.) Though Petitioner indicates that he "never breached" his prior release on bond, (Doc. 1 at 4), the I-213 indicates that on July 27, 2018, Petitioner breached his bond after an obligor failed to deliver him to the New

York Immigration and Customs Enforcement Field Office. (Doc. 7 at 13.)

On January 30, 2020, Petitioner filed an I-290 Notice of Appeal or Motion, which was denied on June 2, 2020. (Doc. 7 at 13.) On September 8, 2022, however, ICE granted Petitioner's request for stay of removal. (*Id.*; *see also* Doc. 13-1 at 3.) Specifically, ICE granted a one-year temporary stay of removal based on a recent Secretary of Homeland Security memorandum granting low priority to people who met certain qualifications, which Petitioner did. (Doc. 14 at 3.) Accordingly, on September 30, 2022, DHS placed the Petitioner on an Order of Supervision ("OSUP") "[b]ecause the agency ha[d] not effected [his] deportation or removal during the period prescribed by law." (*Id.* at 13, 50–53.) The release conditions required, in relevant part, that Petitioner "not travel outside New York for more than 48 hours without first having notified th[e] agency office . . . and obtaining approval from th[e] agency" as well as "furnish written notice to th[e] agency office of any change of residence or employment 48 hours prior to such change." (*Id.* at 50.) At the time of his release, Petitioner and his wife lived in Niagara Falls, New York, in a home owned by his wife, which was the address on file for his OSUP reporting requirements. (Doc. 1-4 at 1.)

On April 10, 2023, Petitioner filed an I-130 Petition for Alien Relative, to adjust status through his U.S. citizen wife, which remains pending. (Doc. 7 at 14; *see* Doc. 1-3 at 2; Doc. 1-4 at 1.) Sometime in June 2023, ICE converted Petitioner's reporting requirements to telephonic check-ins. (Doc. 1 at 2; *see also* Doc. 7 at 13.) Petitioner claims that he answered every call as required. (Doc. 1 at 2.) In year 2023, Petitioner moved from Buffalo, New York to Elk Grove, California, without informing ICE, which Respondents argue was in violation of his OSUP conditions. (*See* Doc. 7 at 4, 14; Doc. 1-4 at 1.) Petitioner's wife explains that he did not update his address with ICE because, on advice of his immigration counsel, because his "matters were still pending in New York," and the home was still owned by his wife. (Doc. 1-4 at 1; Doc. 8 at 3.) According to Petitioner, Respondents assertion that he was in violation of OSUP ignores that ICE itself placed him on telephone reporting and accepted his calls for two and a half years while Petitioner lived in California. (Doc. 1 at 2.)

After his I-130 family petition had been pending for over three years, Petitioner received notice from USCIS that he and his wife had been scheduled for an interview on June 30, 2026, at the Buffalo New York Field Office. (Doc. 1-3 at 1.) On June 28, 2026, Petitioner, his wife, and their daughter arrived at the Sacramento Airport to fly to Buffalo for their scheduled interview. (Doc. 1 at 6.) Petitioner was carrying his interview notice with him. (*Id.*) ICE officers intercepted him at the airport and took him into custody. (*Id.*) Because of the arrest, Petitioner was unable to attend his scheduled I-130 family petition interview. (*Id.*)

That same day, ICE served Petitioner with a Notice of Revocation of Release indicating that Petitioner's release had been revoked

> pursuant to 8 C.F.R. § 241.4(l). (Doc. 7 at 55.) The notice did not cite a release violation, or Petitioner's failure to update his address, as the basis for revocation. (*See id.*) Instead, the notice explains that Petitioner's release was revoked to "enforce the removal order entered against" him because "ICE has the ability and means to effectuate" his removal. (*Id.*) Specifically, ICE had "obtained a travel document and scheduled Petitioner's removal to take place no later than September 26, 2026." (*Id.*) That travel document includes Petitioner's Albanian passport, set to expire in 2035. (*Id.* at 63.) Included in the Notice of Revocation was notice of an informal interview, (*id.* at 56), which also took place on the day of Petitioner's arrest. (*Id.* at 61.) Finally, that day ICE also issued an I-205 administrative warrant for Petitioner's arrest. (*Id.* at 58.)
>
> In July 2026, Petitioner filed a petition for writ of habeas corpus and TRO arguing that the government failed to comply with controlling regulations when revoking Petitioner's release, did not provide a meaningful opportunity to respond, and engaged in arbitrary conduct by arresting him while on the way to his USCIS family petition interview to adjust status. (*See* Docs. 1, 5.)

(*Aruci* Doc. 15 at 2–5.) The Court denied the petition in *Aruci* on August 25, 2026, finding that Ajet's re-detention was justified because there was a significant likelihood of his removal in the reasonably foreseeable future. (*Id.* at 6.) On September 2, 2026, Ajet appealed and sought an emergency stay of removal. (*Aruci*, Docs. 17, 20.)

Meanwhile, on July 6, 2026, Respondents scheduled Ajet for removal via a commercial flight to Albania scheduled for July 13, 2026. (Doc. 12-1, ¶¶ 5–6.) However, in response to the *Aruci* petition, this Court entered a temporary stay of removal that same day, so he was not removed. (*Aruci*, Doc. 6.)

On July 13, 2026, USCIS issued a notice rescheduling the I-130 interview for August 17, 2026 in Buffalo. (Doc. 1, ¶ 20.) Presumably because Petitioner was still detained, Samiya's then-counsel asked USCIS to reschedule. (*Id.*, ¶ 21.) By letter dated August 7, 2026, the Buffalo Field Office Director denied that request, stating that "[t]he beneficiary is not required to appear for the interview; therefore, the interview will not be rescheduled." (*Id.*; Doc. 1, Ex. 3.) On August 12, 2026, present counsel for Plaintiffs entered an appearance before USCIS and requested that the interview be rescheduled and transferred to a California field office. (Doc. 1, ¶ 22.) USCIS agreed, cancelled the interview, and transferred the file to the Sacramento Field Office. (*Id.*, ¶ 23 & Ex. 5.) On August 19, 2025, the USCIS in Buffalo confirmed that "[o]nce further action is

taken on the application, notice will be sent to the current address of record on file with USCIS. At this time, no further action is required from you." (*Id*., Ex. 4.)

On August 28, 2026, a few days after the Court denied the *Aruci* petition, DHS obtained another commercial airline ticket to remove Ajet to Albania, scheduled to depart from San Francisco International Airport on September 3, 2026. (Doc. 12-1, ¶ 7.) However, on September 3, 2026, approximately one hour before the flight was to depart, the assigned Deportation Officer received notice that the Ninth Circuit had administratively stayed the removal. (*Id*., ¶¶ 8–9.) The planned "commercial witness departure removal" was aborted, and Ajet was transported back to Golden State Annex. (*Id*., ¶¶ 8–10.)

On September 15, 2026, after briefing was completed, the Ninth Circuit declined to stay removal and lifted its emergency stay order. (Doc. 12-1 at 6). Petitioner then filed a stay request with Justice Elena Kagan, who also declined to enter a stay of removal. *See Aruci v. Wilson*, 2026 WL 2878361 (U.S. Sept. 24, 2026).

On September 28, 2026, DHS again scheduled Ajet for removal by commercial airline, with a planned departure on October 8, 2026. (Doc. 12-1, ¶ 8.) Plaintiffs filed this lawsuit and TRO request on October 4, 2026. DHS has committed that it "will not remove or transfer Petitioner Aruci out of this jurisdiction until this court rules on the TRO application in this matter." (*Id*., ¶ 9.)

In the present case, Plaintiffs advance five causes of action. The first, advanced by Samiya alone, alleges that the USCIS, has unlawfully withheld and unreasonably delayed adjudication of the I-130. (*See* Doc. 1, ¶¶ 41–44; *see also id*., ¶ 1 ("This action asks the Court to require the government to finish what it started: adjudicate Ms. Malik's Form I-130 petition, at the office the government itself has now designated, before it executes a removal that would convert her husband's eligibility to adjust status inside the United States into a decade of statutory bars from outside it.").) It is Plaintiffs' position that "Congress has supplied a 180-day benchmark" for adjudication of the petition; Plaintiff Malik's I-130 petition has been pending for 1,260 days; USCIS has determined that the petition is ready for adjudication as indicated by the fact they have twice scheduled the requisite interview; and that "the only reason the matter has

not been concluded is that another component of the same Department detained the beneficiary on his way to the first interview, has held him through the second, and now proposed to remove him before the third." (*See id.*, ¶¶ 43–44.)

The second claim is for statutory mandamus under 28 U.S.C. § 1361 and asserts that Plaintiff Malik "has a clear right to adjudication of her petition"; that there is no other adequate remedy; and that "[m]andamus lies to compel Defendants to schedule and conduct the interview and to decide the petition." (Doc. 1, ¶¶ 45–46.)

The third claim, also advanced by Samiya alone, alleges that her procedural due process rights in the lawful adjudication of her petition have been violated by Defendants' conduct because:

> [USCIS] has twice scheduled both spouses for interview and transferred the case to this District, where both now are, without saying whether it will hear from Mr. Aruci. Defendants have deprived Ms. Malik of that process not by denying her petition on the merits, which she could contest, but by scheduling it through one component and, through another, arresting the beneficiary on his way to the appearance USCIS required, holding him through the second date, and now proposing to remove him before the third. A deprivation accomplished by making the required process impossible is still a deprivation.

(Doc. 1 at ¶ 49.)

The fourth claim, brought by both Plaintiffs, alleges that Defendants violated the APA and the INA by using the "petition process to effect arrest and removal." (Doc. 1, ¶ 51–53.) In this claim, among other things, Plaintiffs allege that "the INA does not permit [ ] the step Defendants now propose: removing the beneficiary before the interview USCIS has twice scheduled and has transferred to this District, so that the process Congress created for Ms. Malik ends by the government's hand rather than by decision." (*Id.*, ¶ 52 (citing *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018); *Singh v. Chestnut*, No. 1:26-CV-01055-DAD-CKD, 2026 WL 1758396, at *2 (E.D. Cal. June 18, 2026), *report and recommendation adopted*, No. 1:26-CV-01055-DAD-CKD, 2026 WL 1805484 (E.D. Cal. June 23, 2026)).)

Fifth, Ajet alleges that his continued detention without the custody review required by 8 C.F.R. § 241.4(l)(3) is unlawful. (Doc. 1, ¶¶ 54–58.) He further asserts that this claim could not

have been plead in the prior habeas action because it was not ripe until three months had passed since his detention on June 28, 2026. (*Id.*, ¶¶ 56, 58.)

## III. DISCUSSION

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Here, Defendants argue that Petitioner's "entitlement to a stay" is barred by 8 U.S.C. § 1252(g), as that provision has been interpreted in *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022). (Doc. 12 at 8–9.)

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." This jurisdictional bar applies only to those three specified actions because the statutory aim is to prevent "attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999); *see also Arce v. United* States, 899 F.3d 796, 800–01 (9th Cir. 2018) (limiting § 1252(g) to the "three specific *discretionary* actions" mentioned) (emphasis in original).

Plaintiffs assert here that they are not challenging a discretionary decision to execute the removal order but rather bring an "independent claim belonging to a citizen petitioner against a different agency" and thus they are not foreclosed from seeking the "narrowly ancillary relief requested here" because "the stay is not the claim; It preserves the claim." (Doc. 13 at 4.)

The Court finds some guidance in *Poghosyan v. U.S. Dep't of Homeland Sec.*, No. 2:25-CV-03091-SB-ADS, 2025 WL 1287771 (C.D. Cal. May 1, 2025), which considered a similar situation. Poghosyan was ordered removed, thereafter filed an application to adjust his immigration status, and then filed a lawsuit seeking to delay execution of the removal order until after the government decided his pending adjustment application. *Id.* at *1. He brought claims under APA alleging, among other things, that USCIS must adjudicate his adjustment application before he is removed and that ICE should not be permitted to remove him before adjudicating his application because doing so would violate his statutory right to adjustment. *Id.* at *2. He

requested mandamus and injunctive relief that USCIS be ordered to adjudicate his adjustment application; and that ICE be enjoined from removing him before that application is adjudicated. *Id*.

*Poghosyan* provides a helpful summary of the most relevant authorities:

> In *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), the petitioner, while being detained by ICE for removal, moved to reopen his immigration case and filed a habeas petition in district court seeking to enjoin his removal until his motion to reopen was decided. *Id*. at 776. The Ninth Circuit concluded that § 1252(g)'s "plain text" barred jurisdiction over the petitioner's claims, reasoning:
>
> > The execution of his removal order is precisely what [the petitioner] challenges here. [He] seeks to enjoin the government from removing him—or in other words, enjoin "action by the Attorney General to ... execute removal orders against [him]."
>
> *Id*. at 777 (quoting § 1252(g)).
>
> In reaching this conclusion, the Ninth Circuit rejected the petitioner's contention that he was not challenging the Attorney General's removal authority, but only the allegedly unlawful decision to "remove him now"—i.e., while his petition to reopen was pending. *Id*. (cleaned up). The court held that the Attorney General's unreviewable discretion to execute a final removal order extends to the timing of the execution, stressing that § 1252(g)'s jurisdictional bar "does not include any temporal caveats." *Id*. That is, "the discretion to decide whether to execute a removal order includes the discretion to decide when to do it. Both are covered by the statute." *Id*. (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)); *accord Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268 (11th Cir. 2021) (finding that § 1252(g) bars review of any challenge to the execution of a final removal order).
>
> Plaintiff seeks to distinguish *Rauda* by arguing that the petitioner there could pursue his pending motion to reopen even after removal. 55 F.4th at 777 ("[Plaintiff] has taken full advantage of his statutory rights and will continue to have access to the process guaranteed to him under the statute even if he is removed."). By contrast, Plaintiff's application for adjustment of status will be deemed abandoned and denied upon his removal. 8 C.F.R. § 245.2(a)(4)(ii)(A). He argues that the Attorney General lacks authority to remove him now because it will deprive him of his statutory right to seek adjustment.
>
> But the holding in *Rauda* does not turn on that distinction. Relying on the statute's plain language, the panel held that the petitioner could not challenge either the decision to execute a removal order or its timing. Here, Plaintiff's challenge falls within the scope of

that holding, as he seeks to enjoin the execution of his removal order, claiming that additional time is needed to pursue relief from that order. Although *Rauda* found it was "not true" that removal would deprive the petitioner of a statutory right to file a motion to reopen, that finding was not central to the panel's analysis. 55 F.4th at 777. Instead, the panel "agree[d] with [its] sister circuits" that § 1252(g) bars any challenge to the discretionary decision to execute a removal order "[n]o matter how [a petitioner] frames it." Id. at 778. The panel cited with approval several cases relevant to Plaintiff's argument, including *Tazu* and *Camarena*.

In *Tazu*, the petitioner asked the district court to enjoin the execution of his removal order while he pursued the reopening of his removal proceedings and his application for a provisional unlawful presence waiver. 975 F.3d at 295. A "provisional unlawful presence waiver" allows a noncitizen facing removal to leave the U.S., apply for admission abroad, and return without triggering the multi-year bar for prior unlawful presence. 8 C.F.R. § 212.7(e); 8 U.S.C. § 1182(a)(9)(B). To obtain this relief, the applicant must be "present in the United States at the time of filing the application." 8 C.F.R.§ 212.7(e)(3)(i). The petitioner in *Tazu* "challenge[d] the timing of his removal, asserting that removing him now would interfere with his due process right to stay here while applying for a provisional waiver and appealing the denial of his motion to reopen." 975 F.3d at 295. He argued that § 1252(g) did not apply because he was not contesting the Attorney General's discretion to remove him, only the authority to remove him at that time. 975 F.3d at 297. The Third Circuit rejected this argument as inconsistent with the plain text and design of § 1252(g). *Id*. (concluding that "the discretion to decide whether to execute a removal order includes the discretion to decide when to do it" and noting that "[t]he statute shields that prosecutorial discretion from judicial review apart from a petition for review"). It emphasized that, "[a]ny other rule would gut § 1252(g). Future petitioners could restyle any challenge to the three actions listed in § 1252(g) as a challenge to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law." *Id*. at 298.

In *Camarena*, the Eleventh Circuit reached the same conclusion when confronted with a similar argument by petitioners seeking provisional unlawful presence waivers. The petitioners argued that the government lacked authority to remove them because the "waiver process contains within it a 'regulatory right' to remain until that process is resolved." *Camarena*, 988 F.3d at 1272. The court concluded that "this argument runs headlong into § 1252(g)," which "bars review over 'any' challenge to the execution of a removal order—and makes no exception for those claiming to challenge the government's 'authority' to execute their removal orders." *Id*. at 1273. Like the Third Circuit, the Eleventh Circuit emphasized that if it "held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order." *Id*. at 1274; *see Rauda*, 55 F.4th at 778 (quoting the same

> language). Thus, "when asking if a claim is barred by § 1252(g), courts must focus on the action being challenged," and "[when] that action is the government's execution of the petitioners' removal orders[,] . . . their claims fall squarely within § 1252(g)'s jurisdictional bar." *Camarena*, 988 F.3d at 1272 (cleaned up).
>
> As in *Rauda*, Tazu, and *Camarena*, Plaintiff's challenge is foreclosed by § 1252(g)'s plain language.
>
> ***
>
> In sum, § 1252(g) applies to Plaintiff's request to enjoin the execution of his removal order pending adjudication of his adjustment-of-status application. While he frames his request as a challenge to the government's authority to remove him and prevent him from seeking adjustment, he is ultimately contesting an unreviewable discretionary decision that has no temporal restrictions. *Rauda*, 55 F.4th at 779 (citing *Tazu*, 975 F.3d at 297); *see also Doe v. Noem*, No. 2:25-CV-01103, 2025 WL 1134977, at *7 (E.D. Cal. Apr. 17, 2025) (noting "§ 1252(g) addresses challenges predicated on purported improper use of discretionary authority to commence removal proceedings").

*Poghosyan*, 2025 WL 1287771 at *3–*5.

Plaintiffs concede that *Rauda* "holds that § 1252(g) bars an alien's request to enjoin his removal while he pursues other relief, and that discretion to execute includes discretion over when," but attempt to distinguish the above line of cases on the ground that "*Rauda* did not address an independent claim belonging to a citizen petitioner against a different agency." (Doc. 13 at 4.) In support, Plaintiffs cite *Dhillon v. Mayorkas*, No. 10-cv-00723-EMC, 2010 WL 1338132, at *9 (N.D. Cal. Apr. 5, 2010), which, like the instant matter, addressed APA claims brought by a U.S. Citizen who had filed an I-130 visa petition on behalf of his wife. Ms. Dhillon had been ordered removed while the I-130 petition was pending, in part relying on a Form I-213 prepared by an INS Special Agent who had investigated Ms. Dhillon's past, including a prior marriage. *Id*. at *3–*4. According to the court, the "gist" of one of the Dhillons' claims was that "during the removal proceedings before the IJ, the IJ was wrongfully barred from considering whether or not the USCIS properly determined that Ms. Dhillon's first marriage to Mr. Sagrado was fraudulent. The Dhillons argued that, during the removal proceedings before the IJ, they should have been permitted to cross-examine Mr. Sagrado and/or the author of the I-213 report to rebut the finding that the first marriage was fraudulent." *Id*. at *5. The court concluded that it

lacked jurisdiction to consider that claim because it was a challenge to the removal proceedings. *Id*.

That was not the end of the story in *Dhillon*, however. The parties agreed the court had jurisdiction to consider the Dhillons' challenge to the denial of the I-130 petition. *Id*. Like here, the government argued that "even if the Court has jurisdiction over the claim challenging the I-130 denial, the specific relief sought by the Dhillons []-*i.e.*, a stay of removal-is jurisdictionally barred pursuant to 8 U.S.C. § 1252(g)." *Id*. at *6. The court rejected that argument because the timing of removal was "immaterial to the substance" of the claim." *Id*. at * 7 (quoting *Mustata v. U.S. Department of Justice*, 179 F.3d 1017, 1022–23 (6th Cir.1999).) Put another way, the timing of removal was immaterial because Dhillons' claim was "based not on the removal proceedings and what occurred therein, but on the handling of the Dhillons' I-130 petition . . . The facts relevant to that claim-*i.e.,* that, during the visa petition proceedings, the Dhillons were not given the opportunity to cross-examine either Mr. Sagrado or the INS special agent who prepared the I-213 report-took place well before any decision by the Attorney General to execute a removal order." *Id*. at *8.

To the extent *Dhillon* (decided in 2010, well before *Rauda*) is still good law, it is distinguishable. As presently plead, Samiya's claims against USCIS are not independent of the timing of removal. Plaintiff maintains USCIS has unlawfully withheld or unreasonably delayed adjudicating her I-130 petition, which at the time the complaint was filed had been pending for 1,260 days, and that "the only reason the matter has not been concluded is that another component of the same Department detained the beneficiary on his way to the first interview, has held him through the second, and now proposed to remove him before the third." (*See* Doc. 1 ¶¶ 43–44.)[1]

---

[1] Similar linkage is present in Samiya's due process claim, in which she alleges:

> Defendants have deprived Ms. Malik of that process not by denying her petition on the merits, which she could contest, but by scheduling it through one component and, through another, arresting the beneficiary on his way to the appearance USCIS required, holding him through the second date, and now proposing to remove him before the third. A deprivation accomplished by making the required process impossible is

Assuming it is possible to disentangle aspects of Plaintiffs unreasonable delay claim from the timing of the removal, those independent threads do not clearly demonstrate entitlement to relief on this record. To determine whether an agency's delay is unreasonable under the APA, the Court must apply the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) (quoting *TRAC*).

Plaintiff cites 8 U.S.C. § 1571(b), which sets forth the policy statement that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." (Doc. 1, ¶ 43). However, as one district court summarized:

> The Ninth Circuit has held, however, that similar "sense of Congress" language is "non-binding, legislative dicta," that creates no obligations on USCIS. *Yang v. California Dep't of Soc. Servs*., 183 F.3d 953, 961–62 (9th Cir. 1999). Nonetheless, some district courts have interpreted that language to tip the scales slightly in favor of immigration benefit petitioners. *See Khan [v. Johnson]*, 65 F. Supp. 3d [918,] 930 [(C.D. Cal. 2014)]; *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014). This factor thus favors Plaintiffs, though it does not carry much weight.

---

> still a deprivation.

(Doc. 1, ¶ 49.)

*Liu v. Denayer*, No. CV 21-6653-DMG (MRWx), 2022 WL 17370527, at *4 (C.D. Cal. July 18, 2022).

To the extent Petitioner suggests there has been unreasonable delay simply because more than three years have passed since her I-130 was submitted, that timing is not dispositive. *See Silva v. Kramar*, No. CV-26-00185-PHX-KML (CDB), 2026 WL 2474397, at *1 (D. Ariz. Aug. 24, 2026) ("According to defendants, the 'average processing time nationwide for Form I-130 petitions is 60.5 months,' and courts have found 'delays of up to five years are not unreasonable.' (Doc. 9 at 6.) . . . Plaintiffs do not dispute that the average processing time is 60.5 months."). This is not to say that the independent aspects of Petitioner's unreasonable delay claim are necessarily without merit, only that success on the claim is not yet clear. *See Taiebat v. Scialabba*, No. 17-CV-0805-PJH, 2017 WL 839807, at *6 (N.D. Cal. Mar. 2, 2017) (declining to issue TRO premised upon immigration-related unreasonable delay claim because "[t]he vast majority of cases involving a determination of the 'reasonableness' of time for processing adjustment applications are decided on summary judgment, with a fully developed record and adequate time for the parties to prepare and file their papers, and for the court to consider all the evidence and legal arguments.").

Ultimately, the problem for Plaintiffs' TRO application is that the harms they identify all "follow from removal" (*see* Doc. 7 at 10) not from the delayed adjudication of the petition. Under the authorities discussed above, the Court concludes it lacks jurisdiction to provide relief from removal. Even still, the Court is left wondering why Respondents could not simply schedule the interview, adjudicate the petition, and allow the immigration process to move on to the next step(s). But Congress has stripped this Court of jurisdiction to entertain any request to stay removal under these circumstances. The TRO request is therefore **DENIED**.

///

///

///

///

///

## CONCLUSION AND ORDER

For the reasons set forth above, Plaintiff's request for injunctive relief is **DENIED**. The case shall remain **OPEN**.

IT IS SO ORDERED.

Dated: _October 20, 2026_

UNITED STATES DISTRICT JUDGE